UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

THOMAS MARSHALL LEE, JR.                CIVIL ACTION NO. 15-cv-0600

VERSUS                                  JUDGE FOOTE

STEVE PRATOR, ET AL                     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

  Thomas M. Lee ("Plaintiff") is a self-represented former inmate of the Caddo Correctional Center. He filed this civil rights action to complain about the medical care he received at the jail. The remaining defendants are Sheriff Steve Prator, Deputy Slay, and Kelli Hayes. Those three defendants filed a Motion for Summary Judgment (Doc. 46) that challenged all claims in the complaint. Plaintiff, who has since been released from custody, did not file any timely opposition. For the reasons that follow, it is recommended that the motion for summary judgment be granted and Plaintiff's civil action be dismissed.

**Summary Judgment**

  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for

either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

### A. Plaintiff's Allegations

Plaintiff alleges in his complaint that he was placed in the mental health unit for no justifiable reason, and more than 150 pills prescribed to treat his high blood pressure were taken from him.  Deputy Slay, who was in charge of the housing unit, allegedly refused to give Plaintiff his medication, which resulted in serious headaches, eye pain, chest pain, and other health problems.  Plaintiff complains of a separate incident when medical staff did not give him his Benicar medication for 12 days.

Defendant Kelli Hayes is mentioned in an amended complaint.  Plaintiff references her in connection with a general allegation that his medical issues were neglected at the jail, and he complains that she denied him worker status, but he does not target Hayes with any specific medical care allegations.  The only mentions of Sheriff Prator in the complaint or amendment are allegations that he is the employer of Slay, Hayes, and other staff.

**B. Defendants' Summary Judgment Evidence**

Defendants responded to Plaintiff's allegations with unsworn declarations made pursuant to 28 U.S.C. § 1746 and medical records. Sheila Wright, Health Services Director for the sheriff since 1984, explains that medication for inmates is maintained at the infirmary and dispensed by medical personnel in the inmate's housing unit. One exception is for inmate workers assigned to Unit C, where Plaintiff was housed originally. The Unit C inmates are allowed to administer there own medications, which are referred to as "keep on person" or KOP medications.

Wright explains that Plaintiff's housing assignment changed after he sent a kite communication to Dr. Cole Flournoy, Director of the Mental Health Unit, and stated that he was depressed and having trouble sleeping after learning that his girlfriend gave birth to a stillborn child. Plaintiff was moved from Unit C to the men's mental health unit on January 23, 2015. His personal property was secured and moved to the property room, which is the ordinary procedure under those circumstances. The policy with respect to medication was to deliver the inmate's medication to the infirmary, but Ms. Wright states that "this was inadvertently not done, and his medication remained with his personal property in his footlocker and went to the property room."

Ms. Wright states that a paramedic saw Plaintiff on January 24, at 1:26 p.m., and learned that Plaintiff had not been provided his blood pressure medication since his transfer to the mental health unit the day before. Plaintiff's blood pressure was high, and he complained of a headache. Plaintiff was then provided his blood pressure medication, and

he was scheduled for blood pressure checks. His blood pressure was still elevated by 9:15 a.m. on the morning of January 25, so jail officials sent Plaintiff to the LSU Hospital. Plaintiff returned from the hospital on January 27, and by January 28 he said his depression was only 2.5 out of 10, so he was moved out of the mental health unit.

Deputy Slay says in his declaration that he was a security deputy in the mental health unit at the relevant time. He recalls receiving personal property from Unit C associated with Plaintiff. Slay states he was not aware that Plaintiff did not receive his medication, and as soon as he became aware that there was medication with the personal property, he brought it to the infirmary in accordance with ordinary practice. Defendant Kelli Hayes states in a declaration that she was not involved in Plaintiff's medical treatment or any request for treatment. She merely responded to his administrative remedy requests.

With respect to the Benicar, Ms. Wright states that Plaintiff took at least four medications for blood pressure, including Benicar. It was discovered that Plaintiff did not receive Benicar from February 4 through February 16 after he complained that he was charged for the medications but was not receiving them. Plaintiff had not otherwise complained about the issue, and he did not report any particular problem during the time he did not receive the Benicar. Jail officials determined that the Benicar was on back order, and personnel should have communicated with other pharmacies to find the medication. Due to inadvertence, that was not done, and letters of reprimand were issued to the responsible medical staff.

**The Constitution and Inmate Medical Care**

It is not clear whether Plaintiff was a convicted prisoner or pretrial detainee at the relevant time. That status if often important to determining whether a claim is assessed under the Eighth or Fourteenth Amendment, but the standards are the same with respect to medical care claims based on episodic acts or omissions. Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996) (en banc).

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare, 74 F.3d at 643. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**Analysis**

Defendants shouldered their summary judgment burden by presenting specific facts through declarations and certified medical records, which are competent summary judgment evidence, that challenged the central allegations in Plaintiff's complaint. Defendants admitted that mistakes were made, but 42 U.S.C. § 1983 does not provide a cause of action for a mere negligent act that causes unintended injury. Daniels v. Williams, 106 S.Ct. 662 (1986). And "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice

do not constitute deliberate indifference...." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006).

The facts presented in the motion showed that jail officials responded promptly as soon as they were aware of a medical need, and Plaintiff was given ample treatment in the form of medication and even transportation to the hospital. Perhaps most important, the summary judgment record shows no personal involvement in Plaintiff's medical care by Deputy Slay, Kelli Hayes, or Sheriff Prator. Section 1983 claims may not be based on review of a group of defendants' or unspecified jail officials' actions collectively; each named defendant's acts must be assessed based on his or her individual actions. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007); Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir.1999).

Once the moving defendants informed the court of the basis for their motion and presented supporting evidence, the burden fell upon Plaintiff to present or point to competent summary judgment evidence that demonstrated the existence of a genuine dispute of a material fact. Plaintiff did not file anything in response to the motion, and his earlier pleadings were not verified or otherwise in the form of competent summary judgment evidence. Plaintiff did not meet his burden with respect to any named defendant, so summary judgment for all defendants is appropriate.

Accordingly,

**IT IS RECOMMENDED** that Defendants' **Motion for Summary Judgment (Doc. 46)** be **granted** and that Plaintiff's complaint be **dismissed with prejudice**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of May, 2016.



Mark L. Hornsby
U.S. Magistrate Judge